IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**DELLAJEAN MURLENE MCCRAY,**
**Administrator of the Estate of Jean Lanette**
**Bryant, Deceased,**

**Plaintiff**

**v.**                                                    **CIVIL ACTION NO. 4:20cv119**

**WAL-MART REAL ESTATE**
**BUSINESS TRUST, et al.,**

**Defendants.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant Wal-Mart Real Estate Business Trust and Wal-Mart Stores

East, LP's ("Defendants" or "Walmart") Motion to Dismiss Plaintiff Dellajean Murlene McCray's

("Plaintiff") Complaint pursuant to the Federal Rules of Civil Procedure Rule 12(b)(6). ECF No.

8. The Court has considered the memoranda of the parties and this matter is now ripe for decision.

ECF Nos. 9, 21, and 22. Upon review, the Court finds that a hearing on this Motion is not necessary

and therefore **DENIES** Plaintiff's request for hearing, ECF No. 23. For the reasons stated herein,

Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED**

**WITHOUT PREJUDICE**.

### I. FACTUAL AND PROCEDURAL HISTORY

According to the Complaint, on February 15, 2018, Decedent Jean L. Bryant ("Decedent")

was fatally shot by Cindy Bryant ("Cindy") in the parking lot of a Walmart Superstore located at

2601 George Washington Memorial Highway in Yorktown, Virginia (the "Store"). Compl. ¶¶ 1-

2. Decedent was as an optometric technician at the Vision Center within the Store. *Id*.

On the morning of February 15, 2018, Cindy purchased a gun from the Walmart Firearms Department. *Id*. at ¶¶ 55-56. Cindy left the premises and loaded the gun at a nearby McDonald's restaurant. *Id*. at ¶ 57. Cindy then returned to the Store and confronted Decedent while she was working in the Vision Center. *Id*. at ¶¶ 58-59. The two began to argue until Cindy told Decedent "to get her things and to come with her outside." *Id*. at ¶¶ 59-60. Decedent refused to exit. *Id*. at ¶ 61. Cindy then brandished her firearm and demanded that Decedent leave the Store with her. *Id*. at ¶ 62. Decedent subsequently complied. *Id.*

Once outside, Decedent and Cindy continued to argue in the parking lot and at least one customer attempted to break up the argument. *Id*. at ¶¶ 63-64. At some point, Decedent attempted to run back into the Store; however, Cindy shot Decedent as she was fleeing. *Id*. at ¶¶ 65-66. An off-duty York County Sheriff's Deputy was already on the scene and immediately took Cindy into custody. *Id*. at ¶ 64-65.[1] Decedent later died from her injuries. *Id*.

The Vision Center is operated by Dr. David Barley & Associates, Optometrist, P.C. ("Family Eyecare").[2] *Id*. at ¶¶ 21-25. Plaintiff alleges that Dr. David R. Barley ("Dr. Barley") was a salaried employee of Walmart who managed his optometry practice at the Vision Center through Family Eyecare. *Id*. at ¶¶ 50-51. Decedent; however, was an employee of Family Eyecare. *Id*. Plaintiff claims that Dr. Barley and/or Family Eyecare maintained a landlord-tenant relationship with Walmart through the Vision Center. *Id*. at ¶¶ 36-39. Alternatively, Plaintiff theorizes that Dr. Barley and/or Family Eyecare were employees of Walmart through the Vision Center. *Id*. at ¶¶ 40–42. The Complaint further alleges that Decedent was a "borrowed and/or loaned

---

[1] The numbered paragraphs 64 and 65 of the Complaint are mistakenly repeated on two occasions. This citation refers to the second occurrence.

[2] Plaintiff refers to Dr. David Barley & Associates, Optometrist, P.C. as "Family Eyecare" throughout the Complaint; therefore, the Court will also use this reference.

servant/employee" to Walmart, "acting in furtherance of Walmart's business at the Vision Center and the joint venture between Defendants." *Id*. at ¶ 52.

Plaintiff initially filed the present action in Hampton Circuit Court. ECF No. 1-2. That court ordered a nonsuit of Defendants Dr. Barley and Family Eyecare. ECF No. 1-7. With various Walmart entities as the only remaining Defendants, Walmart subsequently filed a Notice of Removal in this Court on July 24, 2020. ECF No. 1. Walmart also filed an Answer to the Complaint on July 24, 2020. ECF No. 6. On August 28, 2020, Walmart filed the present Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its October 26, 2020 Order, the Court determined it would construe Walmart's Motion to Dismiss as a Rule 12(c) Motion for Judgment on the Pleadings. ECF No. 20. Plaintiff filed a brief in opposition to Walmart's Motion on November 9, 2020. ECF No. 21. Walmart filed its reply on November 16, 2020. ECF No. 22. Accordingly, this matter is now ripe for judicial determination.

## II. LEGAL STANDARD

"A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).   Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions ... without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id*.

### III. DISCUSSION

### A. Count I - Plaintiff's Nuisance Claim

In *Virginian Railway Co. v. London*, the Virginia Supreme Court held:

> A private nuisance is the using, or authorizing the use of, one's property, or of anything under one's control, so as to injuriously affect an owner or occupier of property (1) by diminishing the value of that property; (2) by continuously interfering with his power of control or enjoyment of that property; (3) by causing material disturbance or annoyance to him in his use or occupation of that property.

114 Va. 334, 344-45 (1912). This traditional definition of private nuisance involves an individual's use of their property in a manner that "unreasonably interferes with the use and enjoyment of another's property." *City of Newport News v. Hertzler*, 216 Va. 587, 221 S.E.2d 146, 150 (Va. 1976) (citation omitted).

"[A]n occupant's right to [the] use and enjoyment of land is to be broadly construed." *Adams v. Star Enter.*, 51 F.3d 417, 422 (4th Cir. 1995). However, "[o]ne who has no interest in

4

the property affected, such as an employee at a place of employment, cannot maintain an action based on a private nuisance." *Anderson v. Sch. Bd. of Gloucester County, Co.*, No. 3:18cv745, 2020 U.S. Dist. LEXIS 94645 at \*81 (E.D. Va. May 29, 2020); *see also Yoon v. Gilbert Small Arms Range*, 33 Va. Cir. 254 (1994) (holding that plaintiff's status as an employee did not confer standing to maintain a private nuisance claim).

Similar to *Anderson* and *Yoon*, Decedent maintained no property right in the Vision Center where she was abducted or the Store parking lot where she was shot. Nevertheless, Plaintiff argues that "[a]s an occupant of Family Eyecare's leasehold premises… Decedent had a sufficient interest in the property to pursue a nuisance claim." ECF No. 21 at 6-7. Plaintiff would like the Court to broadly construe Decedent as an occupant-employee who somehow possesses the right to use and enjoy the Vision Center and/or Store – a right vested by private nuisance causes of action – but this would be improper.

It is a valid point that occupants, and not just landowners, can, in some cases, bring suit and recover damages in private nuisance cases. *See Bowers v. Westvaco Corp.*, 244 Va. 139, 148-49 (1992) (where the Court permitted recovery of emotional damages sustained by the landowner's children). But Decedent, and therefore Plaintiff, lack standing as an occupant because employees are not considered occupants under Virginia's private nuisance regime. *See Anderson*, 2020 U.S. Dist. LEXIS 94645 at \*81; *see also Yoon,* 33 Va. Cir. at 254. Instead, the only potential Walmart occupants mentioned in Plaintiff's set of facts are the leaseholders (*i.e.* Family Eyecare and/or Vision Center) since leaseholders have a viable interest in the land. Decedent is merely an employee to these leasehold-occupants and therefore lacks standing. *See Yoon*, 33 Va. Cir. at 254. Accordingly, Plaintiff fails to state a claim for private nuisance.

**B. Count II - Plaintiff's Negligence Claim**

A negligence claim, under Virginia law, requires the existence of a duty, a breach of that duty, causation, and damages. *Burdette v. Marks*, 244 Va. 309, 311 (1992). "Before any duty can arise with regard to the conduct of third persons, there must be a special relationship between the defendant and either the plaintiff or the third person." *A.H. v. Rockingham Publ'g Co*., 255 Va. 216, 220 (1998) (citing *Burdette,* 244 Va. at 311). Here, Decedent was fatally injured by a third party—Cindy— not Walmart. Therefore, Plaintiff must establish a special relationship between Decedent and Walmart or between Cindy and Walmart.

According to the Complaint, Plaintiff alleges alternative theories for a special relationship between Walmart and Decedent. Compl. ¶¶ 78-82. Under one such theory, "a special relationship existed between Walmart as Landlord and [Decedent]'s employer as Tenant." *Id*. at ¶ 79. Under the other, Walmart had a duty to protect Decedent due to their alleged employer-employee relationship. *Id*. at ¶ 81. The Court will in turn address the sufficiency of both relationships as plead.

**a. The Landlord-Tenant Relationship**

Plaintiff alleges that "Walmart had a duty to protect [Decedent] under the circumstances because a special relationship existed between Walmart as Landlord and [Decedent]'s employer as Tenant." Compl. ¶ 79. Plaintiff has alleged little to no facts to support a landlord-tenant relationship between Walmart and Dr. Barley (or Family Eyecare). *See generally* Compl. Moreover, no matter whether it was Dr. Barley or Family Eyecare that Plaintiff alleges was Decedent's employer, a landlord-tenant relationship is a legal impossibility under these circumstances. Under Virginia law,

> "[i]t shall be unlawful for any optometrist to practice his profession as a lessee of
> or in a commercial or mercantile establishment, or to advertise, either in person or
> through any commercial or mercantile establishment, that he is a licensed

6

practitioner and is practicing or will practice optometry as a lessee of or in the commercial or mercantile establishment."

Va. Code Section 54.1-3205. As previously stated, Dr. Barley is a "Doctor of Optometry," Compl. ¶ 21, and Family Eyecare is Dr. Barley's practice, Compl. ¶ 22. Accordingly, absent a plausible claim that Walmart and Dr. Barley were not operating in accordance with Virginia law, Plaintiff's allegations of a landlord-tenant relationship are facially invalid since Dr. Barley, and his practice, are prohibited from operating as a lessee at Walmart's commercial establishment.

### b. The Employer-Employee Relationship

Alternative to the landlord-tenant theory of liability, Plaintiff alleges an implied duty based upon Decedent's employment relationship with Walmart, Dr. Barley, and Family Eyecare. Under Virginia law, an employer-employee relationship can give rise to an "employer's potential duty of protecting or warning an employee" against reasonably foreseeable harm. *A.H. v. Rockingham Publ'g Co.*, 255 Va. 216, 220 (1998).  The existence of an employer-employee relationship "does not depend on… isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

Courts have considered five factors when determining whether an employer-employee relationship exists: whether the alleged employer maintains "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer." *Aldridge v. Goodyear Tire & Rubber Co.*, 1998 U.S. App. LEXIS 9511, at \*6 (4th Cir. 1998). However, based upon the allegations in the Complaint and various attachments, the Court finds that Plaintiff pleads insufficient details concerning the alleged employer-employee relationship between Walmart and Decedent. In support of this special relationship, Plaintiff makes two arguments. First, Plaintiff refers to "Walmart's internet postings" and other data as evidence that

Dr. Barley was an "employee of Walmart." Compl. ¶ 40. Second, Plaintiff furthers that Walmart and Dr. Barley (and/or Family Eyecare) were joint ventures thereby making Decedent a "borrowed and/or loaned servant/employee (or other type of common-law or statutory employee, servant, and/or agent)." Compl. ¶¶ 42-49, 52. But the Complaint, as stated, is substantially lacking for both theories of employment liability.

Regarding, Dr. Barley's alleged employment with Walmart, Plaintiff's facts fail to describe the employment relationship between Decedent and Walmart, only that of Dr. Barley, Family Eyecare, and Walmart. Plaintiff appears to impute Dr. Barley's and Family Eyecare's alleged employment with Walmart upon Decedent, without describing facts specific to Plaintiff to support any such relationship. While Plaintiff tenuously describes an employment relationship with Family eyecare[3], Plaintiff does not allege that Walmart had the power to hire or fire Decedent, that Walmart paid her, or that Walmart governed Decedent's conduct.

In the case of a joint venture, "[t]he negligence of one participant in a joint enterprise is imputed to all participants." *Alban Tractor Co. v. Sheffield*, 220 Va. 861, 263 S.E.2d 67, 68 (Va. 1980). "To constitute a joint enterprise within the meaning of the law, the parties must have a community of interest in the object and purpose of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto." *Id*. However, Plaintiff alleges no facts to support a claim that Walmart and Dr. Barley and/or Family Eyecare had an equal right to direct and govern one another's conduct. In fact, the Complaint, at times, indicates just the opposite. *See* Compl. ¶ 36 (where Dr. Barley allegedly describes Walmart as his "landlord"); *see also* Compl. ¶ 40 (where Dr. Barley is described as "a salaried medical professional in Walmart's Optical Department" and an employee of Walmart). Moreover, even if

---

[3] The Complaint lacks evidence of Plaintiff's employment with Family eyecare aside from general statements such as "Family Eyecare describes Jean as Family Eyecare's employee." Comp. ¶ 51.

Plaintiff had sufficiently pled a joint venture, the Complaint still fails to state a claim as Plaintiff has not stated sufficient facts to allege that Walmart, Dr. Barley and/or Family Eyecare knew or should have known that Plaintiff was in imminent danger given domestic nature of Decedent and Cindy's dispute.

With both the landlord-tenant and employer-employee relationships insufficiently pleaded, the Complaint is devoid of a plausible claim for negligence. Since Plaintiff alleges no plausible special relationship, the general rule applies such that Walmart had no duty to defend against the tortious conduct of a third-party assailant. See *Rockingham Publ'g Co.*, 255 Va. at 220.

### C. Count III - Plaintiff's Wrongful Death Claim

Plaintiff's statutory wrongful death claim is predicated upon proof of negligence on behalf of Walmart. *See* Compl. ¶ 92; *see also* Va. Code Ann. § 8.01-50 (requiring that a decedent's death be caused by some wrongful act, neglect, or default). Accordingly, because Plaintiff has failed to state a claim for private nuisance under Count I and negligence under Count II, Count III also fails as a matter of law.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. Accordingly, this matter is hereby **DISMISSED WITHOUT PREJUDICE**. At Plaintiff's option, Plaintiff is **GRANTED** leave to amend the Complaint, in a manner consistent with this Memorandum Opinion and Order, within **FIFTEEN (15) DAYS** of the date of this Memorandum Opinion and Order. The Court **DIRECTS** the Clerk to provide a copy of this Order to the Parties.

**IT IS SO ORDERED**.

Newport News, Virginia
January 15, 2021                                        _____
                                                        UNITED STATES DISTRICT JUDGE